# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**PAULA M. ERICKSON**                                                                **PLAINTIFF**

**V.**                    **NO. 4:19-CV-00345 SWW-BD**

**ANDREW SAUL, Commissioner**
**Social Security Administration**[1]                                    **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommendation has been sent to Judge Susan Webber Wright. Either party may file objections if they disagree with the facts or conclusions set out in the Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be filed with the Court Clerk within 14 days. If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing the record. If they do not file objections, parties may waive the right to appeal questions of fact.

## I. Introduction:

On April 13, 2016, Paula M. Erickson applied for disability benefits, alleging disability beginning June 20, 2014 (Tr. at 15) Her claims were denied both initially and upon reconsideration. *Id.* After conducting a hearing, an Administrative Law Judge (ALJ)

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

denied Ms. Erickson's application. (Tr. at 22) She requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Ms. Erickson filed this case seeking judicial review of the decision denying her benefits.

## II.  **The Commissioner's Decision:**

The ALJ found that Ms. Erickson had not engaged in substantial gainful activity since the alleged onset date of June 20, 2014. (Tr. at 17) At step two of the five-step analysis, the ALJ found that Ms. Erickson had the following severe impairments: degenerative disc disease, fibromyalgia syndrome, obesity, dysfunction major joints, affective disorders, and anxiety disorders. *Id.*

After finding that Ms. Erickson's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that Ms. Erickson had the residual functional capacity (RFC) to perform work at the medium level, with some additional limitations. *Id.* She could perform work where the interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. (Tr. at 19)

The ALJ found that Ms. Erickson was unable to perform any of her past relevant work. Relying on the testimony of a Vocational Expert (VE) and after considering Ms. Erickson's age, education, work experience and RFC, the ALJ found that Ms. Erickson could perform jobs such as kitchen helper and laundry worker. (Tr. at 21) Thus, the ALJ held that Ms. Erickson was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

In this appeal, the Court reviews the Commissioner's decision for legal error and determines whether it is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the Commissioner's] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, simply because there is evidence to support a conclusion different from Commissioner's. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

### B. Ms. Erickson's Arguments on Appeal

Ms. Erickson maintains that the evidence supporting the ALJ's decision to deny her benefits is less than substantial. Specifically, she raises four points in this appeal: (1) the ALJ failed to fully develop the record; (2) the ALJ failed to consider all of her impairments; (3) the ALJ did not properly evaluate her subjective complaints; and (4) the ALJ erred in his determination of her RFC.

X-rays of Ms. Erickson's hips and lumbar spine were normal. (Tr. at (758-760, 834-835) Normal examination findings are generally not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). On April 25, 2016, Ms. Erickson reported no muscle weakness, joint pain, or back pain. (Tr. at 746) She again denied joint

3

pain or muscle weakness in May of 2016. (Tr. at 754) A musculoskeletal examination on August 8, 2016 showed normal range-of-motion in all joints, no swelling or tenderness in her joints, and no abnormal thickening, swelling, or tenderness. (Tr. at 762-764)

Ms. Erickson testified at the hearing that she did not take prescription medication for pain. (Tr. at 38) According to her medical records, she did not require aggressive treatment for her physical issues. And, she was able to perform light chores, drive, shop in stores, and watch television. (Tr. at 290-293, 322-324) She told her doctor that she wanted to start water aerobics. (Tr. at 702) Such daily activities undermine claims of total disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). State agency doctors reviewed the records and found that Ms. Erickson was capable of medium work. (Tr. at 107, 144)

As to her mental impairments, Ms. Erickson presented as alert and oriented, with full affect and intact memory in December of 2015. (Tr. at 742) She was comfortable, calm, and relaxed. *Id*. At a March 2016 doctor's visit, she appeared alert and oriented, with good eye contact. (Tr. at 738) She also had normal mental status examinations in April and May of 2016. (Tr. at 746, 755) At a consultative examination in August of 2016, Ms. Erickson did not exhibit clinically significant bipolar disorder or depression. (Tr. at 762-764) She was oriented times three. (Tr. at 764) She repeatedly told her providers that psychiatric medication was helping and that she wanted to continue with treatment. (Tr. at 784-786, 858, 876, 882-884, 996) Impairments that are controllable or

amenable to treatment undercut allegations of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

In February of 2017, Ms. Erickson was hospitalized for suicidal ideation; but during her hospital stay, she reported that her mood and anxiety had improved. (Tr. at 814, 827) She denied depression at the end of her stay. (Tr. at 827) She had a normal mental status examination in May of 2017. (Tr. at 904, 944)

Mr. Erickson was again hospitalized for suicidal ideation in October of 2017, but by the end of that stay, she was reportedly much improved. (Tr. at 968-978) In October of 2017, she stated she was feeling "really good." (Tr. at 982) Improvement in her condition supports the ALJ's finding that she was not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

In January of 2018, Ms. Erickson's treating psychiatrist, Kevin Price, M.D., noted that she was fully oriented, had adequate insight and judgment, and was coping well. (Tr. at 993-994) Ms. Erickson told Dr. Price that her medications were helpful. (Tr. at 996) Nonetheless, Dr. Price filled out a form indicating that Ms. Erickson had no useful function in a variety of mental capacities. (Tr. at 799) This conflicts with Ms. Erickson's statements that Abilify and Latuda had improved her condition and that her mood and anxiety were better after hospital stays. (Tr. at 582, 723, 817) She also said that counseling services were helping her. (Tr. at 784-786, 868, 875) Dr. Price's statement

also conflicts with the reports of non-examining doctors who found that Ms. Erickson was capable of unskilled work. (Tr. at 104, 160)

Ms. Erickson asserts that agoraphobia and personality disorder should have been adjudged severe impairments. However, as explained, medication and counseling helped her; and she was able to perform some activities of daily living despite her diagnoses. Her mental status exams were grossly normal. Moreover, once the ALJ proceeds past step two of the five-step analysis, the labeling of an impairment as severe or non-severe has no legal significance; the medical record as a whole is the basis for the determinations at steps three and four. See 20 C.F.R. §§ 404.1545(e), 416.945(e); Social Security Ruling 96-8p, 1996 WL 374184 (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity).

Ms. Erickson makes the same argument about her hand tremors; i.e., that the ALJ should have found the tremors to be a severe impairment. Her examination, however, showed full range-of-motion, no hypothenar atrophy, and only mild tremors. (Tr. at 904) Her grip was fine. *Id*. The ALJ properly assessed Ms. Erickson's impairments at step two.

Ms. Erickson's argument that the ALJ failed to fully develop the record is unpersuasive. First, while the ALJ had a duty to develop a reasonably complete record, Ms. Erickson bore the burden of proving her disability. And second, the ALJ was required to contact treating or consulting physicians for additional information, or order further testing, only if the medical records did not include enough evidence for him to

make an informed decision as to Ms. Erickson's alleged disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011) Here, the state agency doctors agreed in their opinions about Ms. Erickson's conditions; her clinical examinations were unremarkable; and she did not need aggressive treatment. She did not take prescription pain medication, and her psychiatric medications were effective. Here, there was no conflict in the evidence.

The ALJ properly considered Ms. Erickson's subjective complaints. *See Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005)("[W]e defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence."). The ALJ discussed Ms. Erickson's activities of daily living, her normal objective testing results, and the fact that she did not take prescription pain medication. (Tr. at 18-20) He discussed the medical opinions and the weight he assigned to each. (Tr. at 20) The ALJ did not err in concluding that Ms. Erickson's subjective complaints were not entirely consistent with the evidence.

The record supports the RFC the ALJ assigned. Mild clinical findings, positive response to treatment, improvement in condition, and conservative care showed that Ms. Erickson was not as disabled as alleged and that she could perform medium, unskilled work.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Erickson was not disabled. The ALJ properly evaluated Ms. Erickson's impairments; he

properly analyzed Ms. Erickson's subjective complaints; the record was adequately developed; and the RFC incorporated all of Ms. Erickson's limitations. The decision, therefore, should be affirmed and the case should be dismissed, with prejudice.

DATED this 21st day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE